**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

LEOSDANIS MULET-ZALDIVAR,

    *Petitioner*,

v.

ACTING DIRECTOR OF
ENFORCEMENT AND REMOVAL
OPERATIONS, DETROIT FIELD
OFFICE, IMMIGRATION AND
CUSTOMS ENFORCEMENT, *et al.*,

    *Respondents*.

:
:
:
:
:
:
:
:
:
:
:
:
:

Case No. 1:26-cv-00143

Judge Jeffery P. Hopkins

---

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

---

Petitioner Leosdanis Mulet-Zaldivar ("Petitioner" or "Mr. Mulet-Zaldivar"), a citizen and native of Cuba, is detained by United States Immigration and Customs Enforcement ("ICE") at the Butler County Jail in Butler County, Ohio for entering into the United States in violation of U.S. immigration laws. Petitioner has filed a Petition for Writ of Habeas Corpus (Pet., Doc. 1) pursuant to 28 U.S.C. § 2241. Petitioner requests immediate release from detention. Pet., Doc. 1, PageID 15. Respondents filed a Return of Writ (Doc. 7) opposing habeas corpus relief, to which Petitioner replied (Doc. 9). The matter is ripe for adjudication.

### I.    BACKGROUND

Mr. Mulet-Zaldivar entered the United States on December 24, 2022. Pet'r Ex. 6, Doc. 1-6, PageID 25. He is a 35-year-old Cuban citizen with no criminal history. Resp's Ex. B, Doc. 7-2, PageID 74–76. On December 26, 2022, he was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5). Pet'r Ex. 2, Doc. 1-2, PageID 17–20. Petitioner asserts that

1

he complied with all conditions of his parole until his arrest on December 20, 2025. Pet., Doc. 1, ¶ 57. On that date, Petitioner states that he was traveling in Grove City, Ohio, with his wife, Ms. Susana del Carmen Pupo Rodriguez, and two of their children as passengers. *Id*. ¶ 5. An ICE officer identifying himself as Agent Flores allegedly stopped the vehicle and arrested Mr. Mulet-Zaldivar in front of his family. *Id*. For more than six months, Mr. Mulet-Zaldivar has now been detained at the Butler County Jail. Resp't Ex. B, Doc. 7-2, PageID 74–76. He filed the instant Petition for Writ of Habeas Corpus on February 9, 2026. Pet., Doc. 1. His Petition is properly before the Court.

## II.    LAW AND ANALYSIS

It is well settled that: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. Art I, § 9, cl. 2. The constitutional guarantee of the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2) (emphasis added). To preserve the right of the people to obtain relief under this Clause, Congress enacted 28 U.S.C. § 2241. Section 2241 confers on federal district courts the power to issue writs of habeas corpus to persons held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241.

### A.  Section 1226(a) governs Petitioner's detention.

For the reasons set forth in *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026) and *Ortiz Soto v. Saxon*, No. 1:25-cv-768, 2026 WL 1205571 (S.D. Ohio May 4, 2026), the Court first concludes that § 1226(a), not § 1225(b), governs noncitizens like Petitioner who have

2

resided in the United States and were already within the United States when apprehended and arrested.

### B.  Petitioner's detention violates due process.

The Court next considers whether Mr. Mulet-Zaldivar's continued civil detention complies with the Due Process Clause of the Fifth Amendment. Mr. Mulet-Zaldivar argues that it does not under *Mathews v. Eldridge*, 424 U.S. 319 (1976). Pet., Doc. 1, PageID 13; Doc. 9, PageID 112. "Under *Mathews*, the Court must consider the following three factors: '(1) the private interest that will be affected by official action; (2) the risk of erroneous deprivation of that interest; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail.'" *Yac Pastor v. Raycraft*, 817 F. Supp. 3d 546, 559 (W.D. Mich. 2025).

The first *Mathews* factor strongly favors Petitioner. As this Court recently put it, "individuals paroled from civil immigration custody have a protectable liberty interest in remaining so." *Azalyar v. Raycraft*, 814 F. Supp. 3d 926, 933 (S.D. Ohio 2026). Other courts have likewise recognized that "one of the 'most elemental of liberty interests' is to be free from detention." *Pablo-Mendoza v. Lynch*, 820 F. Supp. 3d 673, 684 (W.D. Mich. 2026) (quoting *Hamdi*, 542 U.S. at 529). Here, there can be no serious dispute that Mr. Mulet-Zaldivar is "experiencing [many of] the deprivations of incarceration, including loss of contact with friends and family, loss of income earning, . . . lack of privacy, and, most fundamentally, the lack of freedom of movement." *Rodriguez v. Noem*, 812 F. Supp. 3d 751, 762 (W.D. Mich. 2025) (quoting *Gunaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025)).

Mr. Mulet-Zaldivar has been detained at the Butler County Jail for over six months, since December 20, 2025. Resp'ts Ex. B, Doc. 7-2, PageID 74–76. Prior to his detention,

3

Petitioner resided in Grove City, Ohio with his wife and three children for approximately three years, attended church services regularly, and maintained employment. Doc. 9, PageID 104, 115 ("Mr. Mulet Zaldivar . . . has a wife and three children, a valid Ohio driver's license, a social security card, support letters from friends, family, employer, and not one, but two of Mr. Mulet Zaldivar's church pastors."). The loss of daily contact with his wife and children, and the disruption of his role in his church and workplace, underscore the magnitude of the liberty interest at stake for Mr. Mulet-Zaldivar. Respondents do not meaningfully dispute that Petitioner has no criminal convictions and that he has complied with all conditions of his parole. Pet., Doc. 1, ¶ 57; Resp'ts Ex. B, Doc. 7-2, PageID 74–76. Under these circumstances, the Court finds that Mr. Mulet-Zaldivar has a substantial, protectable liberty interest in remaining free from continued civil detention.

The second *Mathews* factor also weighs heavily in Petitioner's favor. Importantly, "[c]ivil immigration detention must be 'nonpunitive in purpose' and bear a 'reasonable relation' to the authorized statutory purposes of preventing flight and danger to the community." *Azalyar*, 814 F. Supp. 3d at 934 (citation omitted). Petitioner states, however, that he has had no opportunity in any forum to present evidence of his community ties, work history, family obligations, and lack of criminal record, or to contest Respondents' assumption that detention is necessary. Doc. 9, PageID 115–116 ("Respondents do not point to any evidence suggesting flight risk or threat to the community. And considering that Mr. Mulet Zaldivar was previously paroled into the country, he has already been found to not be a flight risk nor a danger to the community."); Resp'ts Ex. B, Doc. 7-2, PageID 74–76. On this record, his continued detention, despite Mr. Mulet-Zaldivar's strong community ties,

4

compliance history, and lack of criminal record, creates a substantial risk of erroneous deprivation of liberty.

The third *Mathews* factor does not alter the analysis. The Government, of course, has an undeniable interest in ensuring that noncitizens appear for removal proceedings and in protecting the community from danger. *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). However, "any detention incidental to removal must 'bear[ ] [a] reasonable relation to [its] purpose.'" *Id.* (citing *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)). Here, Respondents already supervise numerous individuals on release or parole and, in fact, previously supervised Petitioner. Pet'r Ex. 2, Doc. 1-2, PageID 17–20. During supervision, Mr. Mulet-Zaldivar complied with his obligations, attended hearings, and maintained no criminal record. Resp'ts Ex. B, Doc. 7-2, PageID 74–76; Pet., Doc. 1, ¶ 57.

In any event, "[c]ontinuing to enforce Petitioner's detention would likely impose more costs upon the Government, as it would be required to continue funding and overseeing Petitioner's detention." *Garcia v. Noem*, 813 F. Supp. 3d 734, 746 (W.D. Mich. 2025). As the length of confinement increases (which here now surpasses six months), the emotional and financial toll of continued detention for Mr. Mulet-Zaldivar, his wife, and three children, and the Government become substantially greater. Indeed, Mr. Mulet-Zaldivar's family and community ties, together with his consistent compliance history, strongly suggest that the Government can ensure his appearance and protect the community through supervision rather than continued confinement. Accordingly, the Court concludes that, after more than six months of confinement and especially in light of his previously unblemished record on supervised release, his detention is more punitive in nature than nonpunitive, resulting in a violation of the Fifth Amendment's Due Process Clause.

### III.    CONCLUSION

For these reasons, it is **ORDERED** that Mr. Mulet-Zaldivar's constitutional claim challenging his civil immigration detention be **GRANTED**. Respondents are ordered to immediately **RELEASE** him under the previous conditions of parole which existed prior to his detention. In light of this ruling, Docs. 10, 11, 13, and 14 are now **MOOT**.

**IT IS SO ORDERED.**

July 2, 2026

Jeffery P. Hopkins
United States District Judge

6